Good morning, Illinois Appellate Court, First District. Court is now in session. The Fourth Division, the Honorable Justice Robert E. Gordon presiding. Case number 1-9-1-9-6-2, Fitzgerald Mullins v. Timothy Evans. Good morning, Your Honors. May it please the Court. The lawyers who are going to argue the case, please introduce yourself to the Court. Sure. John Moran on behalf of the plaintiffs, appellants. Morning, Justices. Patrick Morris on behalf of Defendants Leonard Dixon, Bruce Berger, and Diane McGee. Good morning. Christina Hansen on behalf of Defendant Appellee Timothy Evans, Chief Judge of the Circuit Court. Okay, the appellant, are you going to reserve some time for rebuttal? I'd like to reserve about five minutes, Judge, three to five minutes. Okay, as to the defendants here, are you going to divide up your time or how are you going to do it? Yes, Your Honor. I was going to go first and reserve time for my co-defense counsel, so even time between the two of us. You're going to divide it seven and a half minutes? Is that what you're going to do? Seven and a half minutes each. Yes. Okay, all right. Let's start with the plaintiff. May it please the Court. Your Honor, this is a case in which we believe we more than sufficiently pled the three counts in the complaint and that the defendants have, in their brief in the appellate court, have resorted to changing the reading of in our pleadings in order to maintain a better case. I want to ask a question about that. Is there anything in your briefs that you wish to correct that was a misstatement that was erroneous or defective in your brief? Was there something erroneous or defective in our brief?  Then in that case, let me start with your last page of your reply. You discussed that the individual defendants rely solely on Roberts versus Board of Trustees. On the last page, page 15 of your reply, I'd like to know where in the individual defendants' brief that is referred to. That was referred to in a pleading they filed in front of the trial court judge. Well, that wasn't before us. They didn't cite it before us. I mean, I'm really kind of at a loss. Now I'm not sure what cases they may have cited below which they didn't cite before us and you're saying it was reversed. I don't know when they cited it and maybe it wasn't reversed by the time they were cited. I don't know, but it was not cited. You will acknowledge it wasn't decided in their brief, right? Before us? Judge, not that I recall. Mr. Reckford, my co-counsel, wrote the reply brief. I, given the pandemic, we haven't been in that kind of close context. I'm not sure what the reference is from. Well, you said it was from the trial court. I know it was mentioned in the trial court judge. That I do know. But I don't see it on your reply. If it's in the brief, somewhere in their brief, the individual defendant, please let us know. Otherwise, it seems that that is something that makes me question some of the other arguments that you make. You know, another example would be your Garcetti defense. The Garcetti defense. Is there any case anywhere in the country that has referred to a Garcetti defense? Or is that something you created? I think that that's what we termed it for purposes of brief writing. So there is no case that has referred to that? There is such a... You mean use that kind of terminology, Judge? Well, you're saying it's a Garcetti defense. I mean, that seems, you know, there are defenses that have names to cases over time. Well, it's been referred to in a lot of different essays and pleadings that Garcetti has been raised by municipalities as a defense to public employees making statements. And Garcetti, so that's, I think that was the sense in which that was termed. That again is kind of, you put it in italics. It's a term of art that we should be familiar with. And I wasn't familiar with, nor could I find any reference to it in any article. I did a search or any case law. So I just, I just, is there anything else that you would like to, that you know that might lead us to things that may not have been? Well, we know that, first of all, there's been no discovery in this case. So we have no idea. What, what had the chief judge, for example. Well, I know there's been no discovery because this is a 215 and 219. So, but that's not right. So there's nothing you want to correct. That was, that's my question. Well, judge, if that's, if that was an error, then I would, I would say withdraw. I'm asking you, I mean, you made an accusation against the individual defendants. Well, the case was reversed. What's the accusation, judge? I'm not sure. Roberts, they cited Roberts and it was reversed. You put that on the last page, which means it's important because it leaves us with an impression. You start with an impression that, oh, they misstate the facts. And then you end with an impression that they misstate the law. So that is one of the themes of your reply. Well, the theme is, is that we plan everything sufficiently. The the case of Roberts is mentioned in the reply brief. I guess that's what you're referring to, where we said that the chief judge allowed defendant Dixon to cover up the x-ray incident. And that would clearly be on the scope of his authority after we look at it. No, no, no. You say, you say the individual defendants rely solely on Roberts. And that was in the, that was in the trial court, judge. They didn't rely solely on, before us. I mean, isn't there a difference between, so you don't, so your brief, we, we had, we need to read the trial court briefs to make sure, is that what you're telling us? I mean, whatever. I said I would withdraw the, I would withdraw the, withdraw the allusion. A little late to withdraw. I mean, we've already, it's too late to withdraw. I just, it's just something I wanted to bring to your attention. Mr. Moran, let me, let me move on to something else here. What, you know, it's not really clear from what we have in front of us without plowing through the record. What exactly were your clients charged with doing that resulted in their discipline? What was the, don't tell me that they, they, I know they reported the, the, what they found on the x-ray, but was there a particular rule that they were alleged to have violated? They have a general rule that they file in every, every case at the JTDC for disciplinary action, saying conduct undercoming and this sort of thing. The specific rule, I, I, I don't, I don't recall what it was at this time. I think that we, we referenced it in the, in the, in the documentation. And one of the clients is a union member. Was there anything brought through the union, you know, through a grievance process and what's the status of that? As far as we know, nothing was brought in the grievance process by Mr. Doyle. Okay. Did either of your clients before receiving the discipline that they received, which was the suspensions, receive anything akin to a louder military? No, they, they were given, they were told to report to Mr. Berger, who basically read them the, the, the charges. And, and that's, that's, that's the, so to this date, that's all that they've received was a notice of certain charges. We do know that the discipline on Mr. Mullins was increased from one day to 15 more days without pay in 2019, in January, 2019. But was there some intervening event between the one day tentative suspension and the 15 day permanent suspension? The only intervening event that could exist would be that Mr. Mullins refused to withdraw, pull, pull his complaint to the Fairfax. But as we sit here today, your answer basically to my first question is that they were charged with something akin to conduct unbecoming an officer. Correct. Okay. And is the, is the full collective bargaining agreement anywhere in the record? It looks like we can only find the first page or so. The first page was, was attached as an exhibit, but I believe that we've attached the entire bargaining agreement in the appellate record. That came up both below and Mr. Rittenberg, I believe, attached it to some of the pleading that he, he had. Can you, when you do your reply and let us know where it is in the record? Yes. The 15 day from one day to 15 day suspension for Mr. Mullin, is that in the record, the 15 days? Yes, it's pledged. It's pledged in the third amendment complaint from Mr. Mullin. And at paragraph 39. Okay. Thank you. We believe that the first amendment rights and the due process rights in this case are, are clear. The, they're not so clear because that's why you're before us. If they were clear, I don't think you'd be here. I'm trying to figure out what Doyle and Mullin's duties were. Didn't they have, didn't first start with Doyle, didn't he have a duty when he saw something that looked like a gun to report it? Isn't that part of his job? He's a security officer. He running the x-ray machine. There was no duty to report anything to the sheriff. His I said it, did he have to report it to anybody? Yes. He's supposed to report it to Doyle was supposed to report to the supervisor Mullins, which he did that, right? Yes. Okay. So he, that was his duty, right? Yeah. Well, yeah, that's that, that, that was what his, his, his, his right, his duty as an employee was. Yes. It doesn't affect him to do that. And that, which is what he did. He wasn't speaking as a private citizen. Was he? You're talking now strictly about Doyle. Yes. That's a question of, you know, interpretation for jury to decide that. Not for me. Why is that for the jury to decide? Because we don't have any discovery as to why do we need discovery in that? I want to find out what the institution, I believe that Mr. Doyle's duties were in his position as a security. It doesn't matter. If you're a security guard, don't you have a duty reported to somebody when you see something, there's a gun, or you just let it go and you don't tell anybody. Is that what you're saying? He hasn't, he reported it to his supervisor, which was following JTDC policy. Okay. So it was part of his duty. So let's talk about Mr. Mullin. It wasn't his duty then to report it to the sheriff. No, his duty was to report it to the deputy superintendent. At least that's, that's what the defendants have claimed. And instead he reported it to the sheriff and was ordered by the superintendent to withdraw the complaint, which he refused to do because he saw a weapon being carried into the JTDC, which is a violation of Illinois law. So he was, you're saying he had, he was never reported to the sheriff. It's not anything regarding his job. It's outside the scope of his job. Is that what you're saying? Correct. What about the, you refer to in your briefs to a lot of exhibits with regard to the first amendment issue. How can we take account of those exhibits when it's a 2-6-15? You have to take account of the exhibits regardless because of... I'm talking about the affidavits. You talked about affidavits. I'm not talking about things that are attached to the complaint, but affidavits. Well, I believe some affidavits were attached to the later complaints. Remember we're on the third and second amended complaints in this case. And code civil procedure 2-6-0-6 says that exhibits attached to the complaint are part of the pleading. We also advanced Messrs. McCoy and Reitzel's things as meeting all the requirements for a rule 191 affidavit, which would affect the 2-6-19 part of the case. I wasn't talking about the 2-6-19. I was talking about, I understand that it's a 2-6-15 that I was wondering about. In regard to the due process issue? In regard to our taking account of any affidavits. Well, I think that that's one of the problems with so-called hybrid motions, Judge. The possibility of confusion... I'm not confused. We take account of them under 2-6-19, but not under 2-6-15, right? Well, Judge, if the affidavits are in the complaint, then you have to take account. I have to go check and see sometime. We had about a one-year pandemic and it's made things a little bit difficult to organize that sort of thing, but I don't believe... How does a pandemic... I'm not looking for... I know we had a pandemic, but this is your case. Everything you have, all the pleadings, right? I mean, I don't understand you referencing to the pandemic, quite frankly. I'm a little confused, Judge. You're referencing the pandemic. How does that relate to your presentation? Oh, do you mean to memorizing what's in the briefs or memorizing what's in the complaint? I'm not talking about memorizing anything. I'm asking you questions about... You keep referring to... I mentioned the pandemic only because it's been a difficult year for many different people. That's all. That's all I want to say about that. As far as whether this material is in the brief, I believe my recollection is that the attachments of Breissel and McCoy were attached to the Third Amendment complaint in Mullen, but I have to go back and check. These were very large documents, and sitting here with the number of issues that we were looking at on appeal, it's difficult to recall those matters. I think I listed the exhibits that were attached to the pleadings in our brief, in the initial footnote. So let me just see if they're there. Footnote three. Is there any further argument that you want to make in regard to this case? Well, yes, Judge. I was going to say that the Seventh Circuit is thoroughly held as to the Garcetti issue, that we have just a two-part case. A speech is constitutionally protected if it's a matter of public concern, and two, made as a private citizen. I think that certainly as to Mullen, he satisfies all of those areas. The due process issue we mentioned, we believe we have protectable property interests. First, Doyle, because of his collective bargaining agreement, and second, yes, to Mullen's... Where are the collective bargaining agreement? Every collective bargaining agreement has... All we have is the first page. You don't have to bleed the whole thing. Mr. Rittenberg, I'm not... You're not the council here speaking. Mr. Moran? I was under the impression that we had submitted the remainder of the collective bargaining agreement. Now, there's been no discovery that would have been one of the first things we would have asked. Even if you... Okay, let's assume you did. Where in the collective bargaining agreement should we look? You'd look at the grievance proceedings. Uh-huh. And what does it say in there that would give property right? Just as a right, most collective bargaining say they have a right to confront the witnesses against them, notice of the charges, and a hearing, none of which has occurred here. The US Supreme Court has held that there's... Property rights are created by rules, statutes, regulations, and so forth. I won a case called Bradley versus Village of University Park in the Seventh Circuit on that issue, uh, and we cite that case. The... As far as the other issues, the civil conspiracy issue, it's clear that there was a massive cover-up going on at the JTZC engineered by Superintendent Dixon, and the facts are more than sufficiently applied to show that everything they did was an attempt to cover this up. The order to remove the complaint from the Sheriff's Office, the order to Mr. Mullins to address his people and say that it was a sunglass case and not a gun that was being brought into the institution. We're at a pleading stage. There's no denial that a gun was being brought into the institution. Uh, so those are some of the other issues, uh, and I just suggest that the court, uh, look at the, uh, lengthy brief that we presented on the remainder of the issues. Didn't it show that there was no gun? No, never. Okay. The Chief... The Superintendent says there was no gun, with his private investigation, which has never been disclosed, and, and so forth. The Superintendent, who's directly appointed by the Chief Judge, the, uh, the statements that we attach the affidavits on this part of the case, uh, clearly show that, uh, the, uh, there was a gun, there was an argument about it, there was an argument about the whole situation going on at the highest levels of the JTDC. And, and, and the individuals, Reitzel and McCoy, both say it had to be a gun. It looked like a gun, came like a gun. Uh, it's only the second time through with the purse, 10 minutes, about 10 minutes later, that all of a sudden the gun is transformed into a sunglass case. Um, I don't know. That's a jury question. But as far as I can tell, it, the exhibit, which the x-ray pictures show a gun, they don't show a sunglass case. So, uh... Hey, you want to reserve some time for your rebuttal? Yeah, I'll reserve whatever's left. Okay. Is there any further questions by any members of the panel? No. Okay, uh, let's hear, uh, uh, from the defendant. Good morning, Your Honors. Again, Patrick Morris on behalf of Defendants Dixon, Berger, and McGee. Um, the Code of Founds Council will present arguments on behalf of Chief Judge Evans. In this case, by plaintiff's own allegations, on October 7, 2017, they allowed a supervising employee at the JTDC to enter the facility in possession of an unauthorized firearm in her handbag, go through the security entrance and x-ray screening that the plaintiffs were directly in charge of overseeing, walk past Doyle unabated, then allow several minutes to pass before having the supervisor return to the security entrance to undergo an additional search of her person and her workspace, only to find that she possessed no firearm. No firearm was ever recorded at any point, ever recovered at any point in this case. Plaintiffs claim that based on these facts, along with allegations that they were they have asserted valid claims against defendants under the First Amendment Due Process Clause and Purcell Conspiracy. When presented with these facts, the circuit court dismissed all three of these claims and this court should affirm the ruling. Let me ask you the same question I asked Mr. Moran. What exactly were these employees charged with doing? What was the misconduct that they were charged with doing? And I'm glad you asked that because I want to clarify, Doyle was not disciplined for conduct on becoming of an officer. He was disciplined because by his own admission, he had allowed a firearm to be x-rayed in a screening machine, allowed that individual to leave, and then had to go back and bring the individual back. If he had, as he alleges in this case, seen a firearm in the x-ray, it was his duty as the person in charge of the security post to investigate it at that time while other officers were present and while the person was secured. That's why Mr. Doyle was suspended for his violations of JTDC policy and his duties as a security officer. Mr. Mullins was disciplined, I believe, because he essentially spread rumors around the JTDC that there was a gun in the facility when at no point had any gun been found. So essentially, he was significant security concerns without having all the information, and that was why he was disciplined. This other thing that opposing counsel brought up about him being suspended substantially for 15 days. Mr. Morris, aren't those charges though internally contradictory? You've got one guy who gets disciplined for not stopping a gun in the building, and the other guy gets disciplined for saying that there's a rumor that there's a gun when there is no gun. Correct, but that presents a security concern. If you have somebody going around saying that there's a gun in the facility and they haven't been able to affirm that, that affects both the integrity of the security officers and the potential concern that might perseverate around the building. Did your employee receive a louder mill hearing? I don't believe so. And if that's the case, why not? I can't say that those are not facts I have today. As Garcetti said, when a public employee makes statements pursuant to their official job duties, the employees are not speaking as citizens for First Amendment purposes. In Garcetti, a prosecutor was disciplined for writing a memo recommending that his office dismiss a case because he believed it lacked credibility. The Supreme Court held that this did not constitute speech under the First Amendment because writing the memo and the official job duty for Mullen, who is he to report to? Mr. Mullins reports to the deputy superintendent along ultimately to Defendant Dixon. So that would be Defendant Dixon, Defendant McGee in this case. Now, what's significant about plaintiff's allegations that they reported to the sheriff is that the sheriff and the JTDC employees have joint security over that facility. It's a large facility that involves areas in which the sheriff has control and areas in which the JTDC does. There are two separate security entrances, one covered by the sheriff and one covered by the JTDC. So when he says that he reported to the sheriff as if it was a separate agency, that's just not the case. They have joint security over that facility. They're in the same building, they're overlooking the same areas and they have the same responsibilities. That's why this case is similar to the Seventh Circuit's finding in Morales v. Garcetti, made to one another about their supervisor's alleged misconduct during an investigation were not done as a private citizen because the officer's job duties included collecting pertinent information regarding the ongoing investigation. They were all involved in that same sort of purview of investigation. Likewise here, Mullins, the sheriff, Dixon are all jointly responsible for the security over that facility. So unlike the case that, you know, this is in Kristofek, where you had an officer who was basically a patrol traffic officer reporting potential misconduct to the FBI, which was an entirely separate agency who had entirely separate jurisdiction. And more importantly, what he was reporting was that his department chose not to file charges against an individual they believe was politically connected. The Seventh Circuit in his job duties had nothing to do with deciding whether to charge citizens. In this case, Mullins had a direct responsibility to oversee the security of the facility and to report potential contraband to other officials in the building who also had authority over security in the facility. Accordingly, as a circuit court rule, plaintiffs failed to establish that they engaged in any protected speech or otherwise reported information of private citizens. They did so in their capacity as JTDC security specialists. Now with respect to count two, this court should also affirm the circuit court's ruling to state a due process claim. Plaintiffs required to demonstrate they had a protectable property interest and were not afforded an appropriate level of process prior to having that interest taken. As was noted by this court, plaintiffs failed to establish protectable property interest. They cite to a CBA that is not part of the record. They cite to provisions that are not part of the record. Are you saying it's not attached to any of the complaints? I'm saying that the relevant provisions of the CBA that would create a protectable property interest are not cited and it's the same with the county code. You're saying that they're cited specifically but they're attached to the complaint? The relevant provisions of the CBA that would create a record and the ones that they do allege are part of the record do not actually create a property interest. It's the same for the county code provisions that they cite. One they cite involves someone who's a non-union employee whereas Doyle is in fact a union employee. Another one says that they are entitled to some sort of grievance process but that does not itself create a property interest in what occurred here where they were disciplined for violating JTDC policies. In any adequate notice they were given a predisciplinary notice. They were brought up on charges. Those charges laid out specific violations of the JTDC general work rules and employee safety rules and then they were entitled. They had a hearing before defendant Berger which the complaint shows included a review of the evidence and ultimately a recommended discipline based on the charges. Plaintiffs argued that they were denied a post-decisional hearing but that's irrelevant if they were given a pre-decisional hearing. I think when you look in the factors that the Supreme Court indicated you're to weigh when considering the level of process due which are the extent of the interest affected, the risk of erroneous deprivation through the procedures used and the government's interest. All those factors weigh in favor of defendants favor here in the due process that was given. Plaintiffs received a one-day suspension and a 20-day suspension respectively. They were given a hearing by a third party hearing officer not the individual who brought them up on discipline charges and most importantly the defendants have significant interest in sharing the integrity of the facility and what the both plaintiffs did was potentially cause security concerns and fail to adhere to proper security measures. So there was an interest by the JTDC to discipline them for those violations. So taking together these facts weigh heavily in the defendant's favor that the plaintiffs were afforded sufficient due process. The hearing officer to which or to whom you just referred wasn't that hearing officer an internal person who was on the staff of the detention center? Yes that's correct your honor. Yeah defendant Berger was a hearing officer who was responsible for overseeing discipline but the discipline in this case was brought forward by a sergeant that was overseeing Dixon and by a deputy superintendent and they present those charges to the hearing officer who not having been involved in the bringing up of the charges or the underlying discipline is to weigh all of the statements that are given the evidence given he reviewed the x-ray findings and issue his discipline. So it's not as though it is you know somebody playing judge jury and executioner this is a separate party it's not an arbitrator but it is sufficient due process given you know the other factors in this case. That doesn't um with regard to the cook county code uh section 44-50 chapter 2 article 2 doesn't that apply to Mullins since he was suspended for a period of more than 10 days? Mullins was not suspended for a period of more more than 10 days and that's that's why it doesn't apply to him. He was one day and Doyle was the 15th? Correct okay and and that's why they can't cite to any they can't cite to any sorry. And uh just lastly briefly on on the final point. Mullins was suspended for one day and you're saying that uh Doyle was suspended for the 15 days? I just want to clarify. I believe that's my understanding yes. That's an important point. Yes I agree I agree I just uh I'm I'm blanking on the on the specifics um but that is my understanding. And just briefly on the last count it plaintiffs the civil conspiracy requires a finding of three separate elements. You know that there are two persons involved that they're working together to accomplish an action that's unlawful or through an unlawful purpose and that one of the conspirators committed an act in conspiracy. And plaintiff's complaint is essentially nothing more than conclusory allegations of a conspiracy. They don't demonstrate where the two or more individuals or the three defendants conspired with one another. They they don't indicate uh there's no allegations showing that they acted in an unlawful manner or or that their actions themselves were unlawful. There's no presence of a crime here. There was no finding of a gun. There was no actual charges brought. And in the fact pleading state they're they're required to bring more than conclusory allegations. And for these reasons we ask the court to affirm the circuit court's ruling on as to counts one two and three. And I'll allow my co-co-defense counsel the remaining time. Okay is there any further questions by any members of the panel? No. Okay let's uh let's hear for the attorney for uh Timothy Evans. May it please the court. Again I'm Christina Hanson on behalf of um defendant Eppley Chief Judge Evans. All four counts of plaintiff's complaint against the chief judge failed as a matter of law. Plaintiff's two constitutional claims brought under section 1983 failed to state a claim as the county as the um my code as the co-defendants discussed because neither Mullins nor Doyle pleaded facts sufficient to state a first amendment or a due process violation. But as to the chief judge plaintiff's claims fail for the additional reason that there are no factual allegations alleging that the chief judge caused or participated in any of the alleged constitutional violations. We would reiterate the points that the co-defendants made with respect to the first amendment claim. Both Mullins and Doyle were acting um pursuant to their responsibilities to ensure security at the detention center um when they reported um when Doyle reported to his supervisor and when Mullins reported to the sheriff's office. And so we think they squarely fall within the within Garcetti and were not acting as citizens. Is it correct uh Doyle was 15 days and Mullin was one day? No. Um the allegations in the complaint um Mullins alleged that he received a one-day suspension without pay. He said that it was in paragraph one. Well they said they said I think you referred to paragraph 39 I might be mistaken but I thought in a later complaint uh my understanding from Mr. Moran was there's something in a record he said that it was 15 days. That's what I heard him say so I'm just trying to see what your side says. Um my I believe in in paragraph one of the complaints Mullins alleged. Which complaint? I'm looking at the third amended complaint Mullins's third amended complaint. On what date? Um March 28th of 2019. Okay and it was raised from to 15 days in 2019. It was what I understood Mr. Moran to say. Um you know what in paragraph 37 he alleges that he received a one-day suspension and then in 39 um he alleged that uh Dixon continued he alleged quote Dixon continued to initiate disciplinary action. So it's unclear whether it was a separate it looks like it would have been a separate charge that was filed. So with respect to this incident. So it's not on the record what what you're saying is there's nothing in the record I mean we're looking at the complaint which is what well we're looking at the complaint there's nothing complaint this is more than one day. There's nothing in the complaint that says more than one day with respect to the the incident that with with respect to the incident that is alleged with respect to the the October 7 2018 firearm incident. Um and that's and and that includes the complaint and the attachments to the complaint and since we're on the 615 motion um that's really all that's relevant to the um court's consideration of those issues. Um uh additionally the uh plaintiff's failed to state a claim with respect to the due process claim again because as uh co-defendants noted um um Mullins doesn't have doesn't uh they've never uh overcome the presumption of at will employment. There's nothing in the record suggesting that either one of them could be terminated only for cause um and so they failed to allege that they had a protected property interest. Additionally um with respect to uh with respect to the chief judge they failed to allege any facts that he caused or participated in the alleged constitutional violations. Under section 1983 they cannot assert a claim of supervisory or vicarious liability on the chief judge. They have to allege that he caused or participated in the alleged constitutional violations and here alleged vicarious liability here. Yes which which is not which is which they cannot do they cannot state a claim against the chief judge in its individual capacity on that theory. Um under Ashcroft v Iqbal they have to allege that he caused or participated in the alleged violation and there's there are no allegations in the complaint that connect the alleged misconduct here. All they allege is that he quote knew or should have known and aside from being a conclusory allegation um you know that that isn't a factual allegation and uh in this context they allege that he knew or should have known generally about misconduct with respect to the operation of the detention center. There's no allegation. They're gonna their response to that is well we have no discovery. Well but they there has not been discovery in this case but they still have to allege facts that that uh you know under under the flag pleading their their obligations to plead the claim is that they have to allege sufficient facts uh demonstrating that they have a claim and they haven't done that here. They haven't alleged any facts suggesting that the chief judge was in any way involved in any of the decision uh in any of the alleged constitutional violations here um and they also could not state um and that was with respect to that they stated their claim as an individual capacity uh claim but they also stated in uh or purported to state an official capacity claim which again they cannot bring because the chief judge is an officer of the state and they cannot sue the state um it's not a person under section 1983 and so for those reasons their um their constitutional claims fail as to the chief judge um plaintiff statutory claims um they've uh two of they had two statutory claims under the ethics act and under the whistleblower act that were dismissed at the pleading stage against the chief judge um and in both of the in with respect to both of those claims um they assert that the uh they they seek to impose liability on the chief judge asserting that um that he was acting as an arm of the county as opposed to a state officer with respect to the operation of the juvenile detention center um but our supreme court held in jury review McLean recognized that the office of the chief judge is an arm of the state and nothing in the county shelter care and detention act changes that analysis um that that provision gives the chief judge authority to appoint um an administrator to serve as the superintendent and uh to appoint all other necessary personnel of the detention center and it gives the chief judge administrative control over the detention center's budget subject to the um subject to cook county board's control um but the fact that the chief judge um may be taking on administrative duties with respect to the detention center as opposed to adjudicatory duties um does not mean that he is not acting as a state judicial officer with respect to his responsibilities at the detention center or also you're saying that his responsibilities are very narrow with respect to the detention center yes um but but still he fulfills those duties as as an arm of the state as the as a judicial officer of the state and um and for that reason the claims under both the whistleblower act and the ethics act fail the ethics act specifically does not apply to the judicial branch of the state um and so a claim simply cannot lie under that statute um and additionally uh plaintiffs can't state a claim against the state the chief judge under the whistleblower act because that claim is barred by the um state lawsuit immunity act and so for those reasons we ask the court to affirm all of the um the dismissal of all of the okay is there any further questions by any members of the panel no okay all right let's hear the rebuttal uh well this is sort of like trial by uh surprise here i uh not having filed an answer they apparently my opponents uh can make effects uh as they go along including the the scope of the investigation by dixon which has never been disclosed in any forum that i'm aware of uh and the fact that mr mullins was uh somehow denigrating the institution by uh recording the felony to uh the sheriff who was standing nearby deputy sheriff um the um paragraph 39 specifically states that mullins received 15 more days on this original one day suspension uh so you can uh read it for yourself uh and and that's pled and there is no answer in this case so uh uh all we have are unsupported statements by opposing counsel as to what that means i think it means pretty clearly that he received a total of at least 16 days and read the read the sentence that you're referring to please sure judge uh let me it says dixon has continued to initiate disciplinary action against mullins in retaliation for mullins making a law enforcement report the latest act today occurring on january 23 2019 a 15-day suspension without pay thank you you're welcome mr moran is it your position that the hearings that your clients received before mr berger as hearing officer did not qualify as louder mill hearings and if so why uh they don't qualify as lot of new hearings because he's not a neutral and detached magistrate uh yeah that's not what i don't think that's what a lot of more requires though a lot of more hearings are often done by internal people well the fact of the matter is is that he he has been found to deny due process in various other cases by by courts in competent jurisdiction uh he has no training or background and he works directly for the uh superintendent so he has invested interest it's it's very difficult to say certainly if some other employee at the jpbc had heard the hearing or was handling the hearing but uh mr berger is anything but and he doesn't describe himself as anything but a biased reviewer he said he worked he he has been cross-examined on some of these issues as far as um some of the other counts chief judge evans uh the attorney for uh judge evans has ignores the functional analysis which is required in this case as to figuring out what judge evans is acting as is he acting as a judge in this matter or is not a 1983 case the garcetti part of the case could be 1983 but uh that's a very limited first amendment issue it's not uh does not have to do with uh uh some of the other comments we did not name the chief judge in the conspiracy account i guess that's that's what they would like um all right but as far as i can i can see we've answered all of their questions uh the fact that they claim that our allegations are conclusory um is based on apparently their accessibility to private statements that don't exist in the in any records uh statements uh looking at uh charges uh one one charges as to mullins uh that he was disrupting the institution by spreading false ideas if anything that underscores the mullins is right to have a name clearing hearing because they are as the case law says even the garcetti cases say uh to be demeaned and defamed uh because you're a public employee and you did something that is a an appropriate action uh calls for a name clearing hearing he's he and if anything it shows that mr mullins had a property interest and it substantiates the due process count he has to go forward and find a position uh based on this uh this record uh as far as um you know for example uh when we heard that a sergeant presented charges against uh mr in front of burger i mean where is that coming from i don't have those records uh i wasn't asked to represent uh mr mullins in front of burger i didn't receive any list of charges uh we've been on the record uh in this case since the date of the x-ray just about and uh the uh the institution certainly would have known that uh we're uh mr mullins had counsel uh and they could have informed us that he was having some sort of disciplinary hearing that could result in his termination but that didn't occur uh we're the plaintiffs are limited under illinois law to what what facts we can amass but we can't amass facts when we're not controlling the institution uh the statements about uh well we know under rule six under 2-603 pleadings are to be construed liberally in favor of maintaining the cause of action and we think we've maintained several causes of action here uh the federal cases federal pleading as the court well knows is notice is is fact is notice pleading and uh all of the cases that they rely on uh and many of the cases that we rely on are summary judgment cases where there's been complete discovery depositions uh the exchange of documents that has not occurred here at all we've received nothing in terms of information about this case in the three years that it's been going on four years now uh so i think that uh we've responded to their uh allegations and we would rest on our briefs and on the uh questions of the court thank you very much i'd ask that the case be reversed and remanded with directing is there any further questions by any members of the panel no okay uh you you've given us a very interesting case and shortly we hope we will have a uh a order or a opinion for you and uh the court will be adjourned but i'd ask the uh other justices to remain for an impression conference